UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

HORIZON BLUE CROSS BLUE
SHIELD OF NEW JERSEY,

    Plaintiff,

v.

EAST BRUNSWICK SURGERY
CENTER et al.,

    Defendants.

Civil Action No. 3:08-cv-4227(FLW)

**OPINION**

**WOLFSON, United States District Judge:**

Presently before the Court is a Motion by Plaintiff Horizon Blue Cross Blue Shield of New Jersey ("Plaintiff") to Remand the above-captioned matter. Defendants East Brunswick Surgery Center ("EBSC"), LLC, USP Central New Jersey, Inc. ("USP"), Brunswick ASC Investment, LLC ("ASC"), and David Kirschenbaum (collectively "Defendants") removed Plaintiff's Complaint to this Court, claiming that Plaintiff's state law claims are effectively preempted by the Employee Retirement Income Security Act's ("ERISA") enforcement provisions under section 502(a). In its Complaint, Plaintif alleges that: (1) Defendants fraudulently submitted claims forms, in violation of the New Jersey Insurance

1

Fraud Prevention Act ("NJIFPA"); (2) common law fraud; (3) negligent misrepresentation; and (4) tortious interference with Plaintiff's in-network provider contracts.  For the reasons that follow, the Court grants Plaintiff's Motion to Remand, and remands the matter back to New Jersey Superior Court, Chancery Division, Camden Vicinage.  However, the Court denies Plaintiff's request for fees.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a not-for-profit health services corporation established under the Health Service Corporation Act ("HSCA") and provides comprehensive health care benefits and insurance to its subscribers.  Pl.'s Compl. ¶¶ 10-11.  Plaintiff offers these services through employer-sponsored, government-sponsored, or individual health benefit plans.  Id. ¶ 12.  EBSC is a licensed ambulatory surgical center with five operating rooms located at 561 Cranbury Road, East Brunswick, New Jersey. A licensed ambulatory surgical center provides physicians and other licensed providers a facility at which to perform outpatient surgical procedures. USP is the owner and operator of EBSC and responsible for submitting health insurance claims to Plaintiff on behalf of EBSC. Doctor Kirschenbaum, a licensed physician, is the owner of Brunswick ASC Investment and operates EBSC.

Plaintiff provides "in-network" health care benefits to subscribers through "participating" medical providers, those medical providers who have entered into contracts with Plaintiff to render services to subscribers in return for fees set by the terms of the contract.  Id. ¶ 13.  Pursuant to these contracts with "participating" providers, the providers must accept negotiated payment for services as payment in

full.  This provision does not affect the subscriber, who normally must pay a co-payment for the provider's services.  Plaintiff also offers health benefit plans and polices that include "out-of-network" or "non-participating" providers, those providers who have not entered into separate agreements with Plaintiff.  In accordance with these plans and polices, non-participating providers set their own fees for services rendered to the subscriber.  Ordinarily, a subscriber who wishes to use a "non-participating" provider may be required to contribute to the cost of care rendered by these providers.  As set forth in the provisions of these health benefit plans, a subscriber who seeks "out-of-network" care may be responsible for coinsurance, deductibles, or other amounts.  Plaintiff asserts that the distinction between "in-network" and "out-of-work" "protect[s] the integrity of Horizon's network of medical providers, require[s] subscribers to consider and share in the cost of health care services, affect[s] Horizon's ability to control the costs of the medical care, and encourage[s] participation in [Horizon's] network of health care providers."  Id. ¶ 24.

Up until May 17, 2007, EBSC was a participating provider in Plaintiff's "in-network" system, thus obligating EBSC to accept negotiated fees as payment in full for services rendered.  On May 17, 2007, EBSC terminated its agreement with Plaintiff, making it a "non-participating" provider.  Plaintiff alleges that soon after the contract was terminated, EBSC dramatically increased its charges for services rendered to Plaintiff's subscribers.  In addition, EBSC allegedly waived payment of coinsurance, deductibles and other subscriber financial responsibilities in order to

3

induce Plaintiff's subscribers to use its services, effectively circumventing the Plaintiff's "in-network" contractual obligations. In support of this allegation, Plaintiff quotes the following language placed on EBSC's claim forms: **"ALERT:** This facility will accept usual and customary payment as ful assignment.  We will honor your members in-network deductible and waive the co-insurance." Pl.'s Compl., Exh. B (emphasis in original).  To induce Plaintiff's subscribers to use EBSC's "out-of-network" services, Defendants allegedly waived nearly $315,000 in patient coinsurance and deductibles on the subscribers' claims and over $3,400,000 of its stated charges for services.  In sum, Plaintiff alleges that Defendants, collectively, fraudulently and tortiously interfered with Plaintiff's "in-network" health benefit plans which resulted in over $5,700,000 in charges to Defendants through health insurance claims.  Thus, Plaintiff proceeds on various state law claims, including (1) insurance fraud under the NJIFPA; (2) common law fraud; (3) negligent misrepresentation; and (4) tortious interference.

Plaintiff initiated this action in New Jersey Superior Court, Chancery Division, Camden Vicinage on June 19, 2008.  Thereafter, Defendants removed the matter to the United States District Court for the District of New Jersey on August 18, 2008.  Pursuant to 28 U.S.C. § 1441, Defendants argue removal is proper because Plaintiff's state law claims are effectively preempted by ERISA's exhaustive remedial measures.  On October 8, 2008, Plaintiff filed this Motion to Remand the above-captioned matter.  In addition, Plaintiff seeks payment of costs and expenses incurred due to the removal pursuant to 28 U.S.C. § 1447(c).  For the reasons that

follow, Plaintiff's Motion to Remand is granted. Further, Plaintiff's request for fees is denied.

## II. DISCUSSION

### A. Standard of Review - Motion to Remand

A defendant who seeks to remove a matter to federal court bears the burden of demonstrating jurisdiction. Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir.2004). Pursuant to 28 U.S.C. §1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants to the district court." On a motion to remand, the court must resolve factual disputes in favor of remand. Entrekin v. Fisher Scientific, Inc., 146 F.Supp.2d 594, 604 (3d Cir. 2001). Generally, a party seeking removal faces an uphill battle as section 1441 must be strictly construed against removal. In re Notice of Removal Filed by William Einhorn, 481 F.Supp.2d 345 (D.N.J. 2007) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108 (1941)).

Whether removal is proper is to be determined by a review of the plaintiff's complaint. Under the well-pleaded complaint rule, a defendant may not remove a case unless a federal question appears on the face of the plaintiff's complaint, or stated another way, "'[a] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one of the plaintiff's cause of action.'" Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003); Ry. Labor Executives Association v. Pittsburgh & Lake Erie R.R., 858 F.3d 936 (3d Cir. 1988).

Thus, removal may not be premised on the basis of a federal defense, underscoring the principle that "the plaintiff [is] the master of the claim" and may avoid litigation in federal court by asserting claims only arising under state law. Catepillar Inc. v. Williams, 482 U.S. 386, 392 (1987).

In the present case, a gleaning of Plaintiff's Complaint reveals no federal claims. Indeed, Plaintiff's claims arise exclusively under state law, specifically the NJIFPA, common law fraud and tortious interference. See Pl.'s Compl. Thus, the Court must determine whether Plaintiff's state claims are subject to this Court's jurisdiction pursuant to the complete preemption doctrine.

**B. Complete Preemption Doctrine and ERISA Claims**

In their Notice of Removal and their opposition papers, Defendants contend that although Plaintiff's claims sound in common law fraud and tortious interference, resolution of these claims necessarily implicates health benefit plans regulated under ERISA. In support of their argument, Defendants assert, and Plaintiff concedes, that the greater portion of the 1,135 patient claims involved were afforded benefits pursuant to employee benefit plans as defined under ERISA.[1] To that end, Defendants argue, this Court must retain jurisdiction over Plaintiff's claims as they are completely preempted by ERISA's enforcement provisions.

Recognizing "that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in

---

[1] The parties do not dispute that many of the benefit plans giving rise to Plaintiff's Complaint are covered by ERISA and those receiving medical benefits under those plans are beneficiaries.

character," the complete preemption doctrine exists as a "corollary of the well-pleaded complaint rule." Pascack Valley Hospital, Inc. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 399 (3d Cir. 2004) (quoting Metropolitan Life Insurance Co. v. Taylor, 481 U.S. 58, 63-64 (1987)).  In particular, the Supreme Court has explicitly designated 502(a) of ERISA as "one of those provisions with such 'extraordinary pre-emptive power' that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Pascack, 388 F.3d 399-400 (quoting Aetna Health Inc. v. Davila, 542 U.S.200, 211 (2004)).  Thus, any state law claims arising within the scope of 502(a) are pre-empted and properly removable to federal court. Metropolitan Life, 481 U.S. at 66.

Given the breadth of remedial measures afforded under ERISA, the Supreme Court has elaborated on which claims come within the scope of complete preemption:

> It follows that if an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls within the scope of ERISA 502(a)(1)(B).  In other words, if an individual, at some point in time, could have brought his claim under ERISA 502(a)(1)(B) and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA 502(a)(1)(B).

Davila, 542 U.S. at 211. Guided by the Court's holding in Davila, the Third Circuit promulgated a two part test to determine which state law claims are completely preempted by section 502 of ERISA. Pascack, 388 F.3d at 400. Under Pascack, a defendant seeking removal must prove that: (1) the plaintiff could have originally brought the claim under 502 and (2) "no other legal duty supports [the] claim." Id. Generally, "the bare fact that [a plan's terms] may be consulted in the course of litigating a state-law claim" is insufficient to justify removal. See Blue Cross of California v. Anaesthesia Care Associates Medical Group Inc., 187 F.3d 1045, 1051 (9th Cir. 1999) (finding that a court's consultation of a ERISA plans in resolving state claims "does not require that the claim be extinguished."). If, however, "a plaintiff's claims are found to 'relate to' an employee benefit plan regulated by ERISA, 'even if the law is not specifically designed to affect such plans or the effect is only indirect,' the plaintiff's claims may be preempted and therefore removed to federal court on the basis of 'arising under' jurisdiction." Aetna Health v. Kirshner, 415 F. Supp. 2d 109, 112-13 (D. Conn. 2006) (quoting Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138 (1990)).

   In light of Davila, courts have generally upheld removal, looking at the relationship between the parties involved and most importantly, the nature of the plaintiff's claims. In Anaesthesia Care, 187 F.3d at 1045, a group of medical providers brought suit to compel arbitration in a fee dispute with a health care plan for breach of the parties' provider agreements. Id. The defendant, a health care plan, removed the action to federal court, claiming that ERISA completely

preempted the plaintiff's state law claims.  Following removal, the plaintiffs filed a motion to remand which was subsequently granted by the district court.  Id.  In affirming the district court, the Ninth Circuit held that unlike other cases, the plaintiffs' claims arose from a provider agreement, and not from an assignment of a beneficiary's rights to benefits under an ERISA plan. Id.  Importantly, the Ninth Circuit noted, the plaintiffs sought to enforce contractual rights, specifically breach of contract and violations of the implied duty of good faith and fair dealing, claims that a patient-assignor could not assert in his own right.  Id.

Similarly, courts have permitted health care plans, such as Plaintiff, to assert claims for common law fraud and claims pursuant to NJIFPA in state court.  For instance, in Horizon Blue Cross Blue Shield v. Amhad, the district court granted the plaintiff health care plan's motion to remand, finding that the defendant health care providers' claims did "'not touch on [the defendant's alleged] fiduciary status, or any claims that a beneficiary may make against [the defendant] in that capacity.'" No. 06-5730, 2007 WL 2265037, at *2 (D.N.J. Aug. 6, 2007) (quoting Anesthesia Care, 187 F.3d at 1054)).  In granting the Plaintiff's motion for remand, the court declined to consider whether the plaintiff was acting as a fiduciary as it was unequivocally clear that the claims in dispute arose from an independent provider agreement.  Here, the burden rests squarely on Defendants to demonstrate that (1) Plaintiff is acting as a fiduciary, as defined by the Act and the courts, in pursuing its claims; and (2) Plaintiff's claims, despite the state and common law

9

labels, are derived from the rights and obligations as defined in the ERISA benefit plans.

### a. Pascack Test

At the outset, the Court notes that Plaintiff's claims would not originate under section 502(a)(1) of ERISA, which states, in relevant part, that "[a] civil action may be brought. . .by a participant or beneficiary. . .to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. §1132(a).[2] Rather, because Plaintiff is neither a participant nor beneficiary of an ERISA health plan, Plaintiff's claims, if preempted by ERISA, would trigger section 502(a)(3), which permits fiduciaries, as defined by the Act, to bring actions: "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain any other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter." Thus, the Court must evaluate Plaintiff's claims under 502(a)(3).

Standing to sue under section 502 is not limited to beneficiaries and participants, but, as mentioned above, extends to an assignee of a plan participant, who, in turn, may stand in the shoes of a party seeking to enforce rights under

---

[2]In addition, the current motion does not implicate "express preemption," as defined under section 514 of ERISA. Unlike 502, section 514(a) provides that "ERISA supersedes state laws that 'relate to' an ERISA plan. Pascack, 388 F.3d 393 at 398 n.4. Thus, section 514 controls which law will apply in the resolution of the dispute and not whether the federal court retains exclusive jurisdiction over the entire case. Id.

10

502(a)(3).  <u>North Jersey Center for Surgery, P.A. v. Horizon Blue Cross Blue Shield of New Jersey, Inc.</u>, No. 07-4812, 2008 WL 4371754, at *3 (D.N.J. Sept. 18, 2008) (citing 29 U.S.C. § 1132(a)).  Regarding fiduciaries, ERISA provides:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A). In construing this provision, the Third Circuit has maintained that "an insurance company with discretionary responsibility over the award of benefits under an employee benefits plan acts as a fiduciary under ERISA."  <u>Wachtel v. Health Net, Inc.</u>, 482 F.3d 225, 229-30 (3d Cir. 2007).  However, in <u>Wachtel</u>, the plaintiff sought to sue the insurance company, claiming it was a fiduciary and was liable for violations of fiduciary duties imposed by ERISA.  Here, whether Horizon can be generally considered a fiduciary under <u>ERISA</u> is not the sole issue.  It is undisputed that the definition of "fiduciary" as set forth in ERISA applies with equal force in all contexts.  The inquiry in the present case is more focused: is Plaintiff acting as a fiduciary in proceeding with its claims, or stated another way, does Plaintiff assert its claims for tortious interference and insurance fraud on behalf of the plan beneficiaries.

11

Regardless of Plaintiff's status as a fiduciary capable of bringing suit on behalf of plan participants, Defendants must also demonstrate that there is indeed no independent legal basis for Plaintiff's state law claims.  To that end, Defendants contend that Plaintiff's claims are nothing more than a thinly veiled attempt to eschew this Court's jurisdiction over ERISA claims.  Defendants further contend that Plaintiff, by its own admission, in its Complaint, invokes ERISA's jurisdiction, when it states that its claims seek "to enforce the provisions of its health benefit plans and policies of insurance." Pl.'s Compl. ¶1.  In response, Plaintiff argues that it does not seek to recoup benefits on behalf of plan participants. Citing ERISA's enforcement mechanisms, Plaintiff contends that its claims fall outside the ambit of ERISA's complete preemptive power.

As to this point, Defendants seek to differentiate <u>Anesthesia Care</u> and its progeny on the grounds that in those cases, a provider agreement served as the basis for independent state law claims.  Citing <u>Anesthesia Care</u> for support, Defendants contend that the Ninth Circuit strictly limited what grounds may constitute an independent legal basis: "the [plaintiff health care providers] are asserting contractual breaches, and related violations. . .that their patient-assignors could not assert: the patients are simply are not parties to the provider agreements between the [plaintiff providers] and [defendant health care plan]."  187 F.3d at 1054. It follows, Defendants argue, that only a valid contract may serve as the impetus for state claims not within the province of ERISA's preemptive power. Indeed, in instances where  courts have found an independent legal basis exists as

12

to substantiate state law claims despite ERISA's preemptive reach, the independent legal basis has been a contract between a health provider and a health care plan. See, e.g., Id.; Ahmad, 2007 WL 2265307 at *1; UPMC Presby Shadyside v. Whirley Industries, No. 05-68, 2005 WL 2335337, at *6 (E.D. Pa. Sept. 23 2005) (finding that remand was proper and "the resolution of this lawsuit requires interpretation of the Subscriber Agreement, not the Plan. The Hospital's right to recovery, if it exists, depends entirely on the operation of third-party contracts executed by the Plan that are independent of the Plan itself."). Conversely, parties petitioning for remand based on other theories, i.e. duty of ordinary care, have generally been denied relief.  See, e.g., Davila, 542 U.S. at 200.

   To further bolster this contention, Defendants cite to other cases, specifically Wayne Surgical Center, LLC v. Concentra Preferred Systems, Inc., No. 06-928, 2007 WL 2416428, at *1 (D.N.J. Aug. 20, 2007), in which the district court found that ERISA completely preempted a health provider's state claims for tortious interference against a health care plan.  In particular, the plaintiffs in Wayne sought the payment of benefits, on behalf of plan participants, as a valid assignee of the participants' claim.  Id. at *4.  As to the second prong of the Pascack test, the court stated that the claims arose from "a dispute over the amount of reimbursement to which [the plaintiff] is entitled as an assignee of its patients' welfare benefit plans as governed by ERISA." Id. at *5.  More importantly, because the health provider sought to collect reimbursement of previously-paid health

benefits, the state claims fell directly within the scope of those claims recognized by the Third Circuit as completely preempted under ERISA. Id.

Nonetheless, the Court finds that Defendants have failed to demonstrate that ERISA benefit plans and obligations underscore Plaintiff's state law claims. First, Defendant's contention that Blue Cross's essential holding is limited to those claims arising under the terms of an independent contract is too narrow a construction and disregards the Davila court's finding that any independent legal duty may provide a proper basis for jurisdiction in state court. Davila, 542 U.S. at 212-13; see also Wayne, 2007 WL 2416428, at *6 (declining to limit the second prong of the Pascack test to claims arising from a separate contract). In Davila, the Court expounded that an independent legal duty does not exist where such a duty derives from obligations imposed by the terms of an ERISA benefit plan. In so doing, the Court rejected the plaintiff's contention that a duty of ordinary care as set forth in a state statute could serve as an independent basis for a state law claim. The plaintiff sought to recover damages for the defendant's failure to provide health benefits, arguing that the state statute provided an independent legal basis from ERISA for the claims. Specifically, the law at issue required managed care entities to "exercise ordinary care when making health care treatment decisions" but exempted those entities, and others, from liability under the statute for denying coverage not provided for in the patient's health care plan. Davila, 542 at 213. To resolve the plaintiff's claims, the Court determined, required "interpretation of the terms of respondents' benefit plans" and that interpretation "form[ed] an essential

14

part of the [plaintiffs' state law] claim, and. . .liability would exist. . .only because of petitioners administration of ERISA regulated benefit plans," subjecting the plaintiff's state claims to complete preemption under 502. Id.[3]

Second, although the Wayne court determined that a claim for tortuous interference was completely preempted by ERISA, its holding is inapplicable in the case at bar.  As a purely factual matter, there is an appreciable difference between a health provider seeking reimbursement on behalf of plan participants based on ERISA benefit plans as opposed to a health care plan, in sole furtherance of its own business interests, seeking to protect its contractual agreements with in-network providers. In Wayne, the plaintiff's claims hinged on a determination of what benefits were due, if any, under the participant's ERISA plan.  Here, what is critical to Plaintiff's claims is not what benefits the plan participants were entitled to under their ERISA plans but the relationship between Plaintiff and its out-of-network and in-network providers.  Nor can it be said that a plan participant in the present case could avail itself of ERISA's enforcement provision in such a manner consistent with Plaintiff's position.  See Ahmad, 2007 WL 2265037 at *2 (finding that the health care plan's state claims were not the type claims that a beneficiary could have asserted against the health provider).  In pursuing these claims, Plaintiff does

---

[3]As noted by the Third Circuit, in Pryzbowski v. U.S. Healthcare Inc., 402 F.3d 156, 162 (3d Cir. 2005), these cases generally fall within two categories: (1) claims challenging the administration of, or alternatively, the eligibility for, benefits; and (2) claims challenging the quality of the medical treatment performed.  The first category are those claims that are within the scope of 502's complete preemption power; the latter are those claims that may proceed in state court.

15

not seek to deny or control benefits as a fiduciary but rather, to protect the integrity of its two-tiered provider system.

Notably, Defendants cite to, and the Court is aware of, no case which has held that a health care plan, similarly situated to Plaintiff, which seeks damages from the overpayment of benefits to a health care provider arising from statutory and common law fraud claims, is acting in a way that enforces the rights of a patient-assignor so as to subject those claims to ERISA's enforcement mechanisms. Defendant must demonstrate, as it is their burden on a motion to remand, that Plaintiff's claims "encroach on the relationship between beneficiary and plan." Anesthesia Care, 187 F.3d at 1052. As to this inquiry, Defendants have failed to articulate in what meaningful way, if any, the ERISA benefit plans at issue in this litigation would be affected by the resolution of Plaintiff's claims under state law principles. Though plan participants will presumably pay more if co-payments are enforced, it does not follow that the plan participants could conceivably, in their own right, file a cause of action seeking to enjoin Defendants' alleged violations of NJIFA and tortious interference with Plaintiff's contractual obligations with in-network providers. Stated another way, Plaintiff's state law claims do not seek to recover benefits, obtain declaratory judgment that a plan participant is entitled to benefits, or enjoin an improper refusal to pay benefits, claims traditionally subsumed by ERISA's panoptic enforcement provision. Hence, Defendant's contention that Plaintiff seeks to enforce benefits under an ERISA benefit plan is unconvincing and oversimplifies Plaintiff's rather novel and complex theories under

16

state and common law.

Obviously, a plaintiff may not evade ERISA's enforcement provisions by characterizing its claims as arising under common law, as such a practice would "elevate form over substance." <u>Davlia</u>, 542 U.S. at 214 (internal quotations omitted).  As a result, courts must be skeptical of ERISA-based claims seeking the recovery of benefits or payments masked as state law claims.  Nonetheless, while it is true that no independent contract exists between the parties, Plaintiff's state claims are not predicated on an alleged failure to provide full benefits to a plan participant.  Instead, the claims emanate from Defendants' alleged comprehensive scheme to circumvent and compromise Plaintiff's contractual arrangements with in-network providers in the state of New Jersey.  Indeed, Defendants, not surprisingly, gloss over the fact that EBSC was a former party to a provider agreement with Plaintiff, and only after termination of the agreement did Defendants waive co-payments and speciously submit claims to Plaintiff for reimbursement in an effort to siphon business from Plaintiff's in-network providers. The prior dealings between the parties, coupled with the allegations in Plaintiff's Complaint, are probative of Defendants' intent to sidestep the restrictions placed on in-network providers through provider agreements while reaping their benefits.  In sum, Plaintiff's legal theory and allegations go far beyond a simple dispute over benefits due or not due to a plan participant under ERISA but involve the intricate arrangements between health care plans and providers.

17

Nor is the Court convinced that the ERISA plans at issue are germane to the resolution of Plaintiff's claims. The fact that a substantial number of the plans at issue are governed by ERISA does not alleviate Defendants of its burden to show that Plaintiff's claims are derived entirely from the particular rights and obligations established by those benefit plans. The Court finds that the basis for Plaintiff's claims lie in New Jersey's insurance fraud statute, which permits a party to simultaneously seek remedies under common law fraud and tortious interference. Feiler v. New Jersey Dental Ass'n, 191 N.J. Super. 426 (App. Div. 1984); see also N.J.S.A. 13:33A-1-30. Thus, these allegations do not implicate the civil enforcement mechanisms of ERISA and fall within the ambit of those claims that may proceed in state court under Pascack; as such, Defendants have failed to carry their burden under section 1441 to establish grounds for removal of Plaintiff's Complaint to this Court. Accordingly, Plaintiff's Motion for Remand is granted.

**C. Fees and Costs for Removal Under 28 U.S.C. § 1447**

Finally, Plaintiff seeks counsel fees and costs associated with the removal of the instant matter to this Court. Under 28 U.S.C. § 1447(c), "[a]n order remanding a case may require payment of just costs and any actual expenses, including attorneys fees, incurred as a result of the removal." Whether an award of fees and costs is appropriate is left to the discretion of the court. Ordinarily, however, an award of fees and costs is not proper where the defendant asserts at least a colorable basis for the removal. Mints v. Educational Testing Service, 99 F.3d 1253, 1260 (3d Cir. 1996).

Although the Court grants Plaintiff's Motion to Remand, the Court will decline to award fees and costs pursuant to 28 U.S.C. § 1447(c). In opposing the motion, Defendants advanced novel arguments concerning an issue of first impression, relying on relevant case law.  Indeed, the Third Circuit has been hesitant to uphold an award of fees where the asserted grounds for removal involve unsettled legal issues.  <u>Roxbury Condominium Ass'n, Inc. v. Anthony S. Cupo Agency</u>, 316 F.3d 224, 228 (3d Cir. 2003).  Thus, the Court finds that there was a colorable basis for the removal, militating against a finding of bad faith and an award of fees. Accordingly, the Court denies Plaintiff's request for fees and costs incurred as a result of the removal.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Remand is granted and its Request for fees and costs is denied.

Dated April 23, 2009                                /s/ Freda L. Wolfson
                                                    Freda L. Wolfson, U.S.D.J.